NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Plaintiff, : | |
| : | Criminal No.: 08-387 (JLL) |
| v. : | |
| : | O R D E R |
| ALLEN TRAVERS, : | |
| Defendant. : | |

**LINARES, District Judge.**

This matter comes before the Court on the March 9, 2009, motion to suppress of Defendant Allen Travers. A hearing was held by this Court on Defendant's motion from July 6 to July 8, 2009.

**IT IS** on this 21st day of July, 2009,

**ORDERED** that for the reasons set forth on the record today, a copy of the transcript of which is attached as Exhibit A to this Order, the motion to suppress [CM/ECF #16] of Defendant Allen Travers is DENIED.

José L. Linares
United States District Judge

1

# EXHIBIT A

1

```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
                      Criminal No. 08-387(JLL)



- - - - - - - - - - - - - - -X
                              :
UNITED STATES OF AMERICA      :    TRANSCRIPT OF
                              :      PROCEEDINGS
          -vs-                :       OPINION
                              :
ALLEN TRAVERS a/k/a ROGER BANKS:   July 15, 2009
a/k/a DONALD CARROLL, a/k/a   :
RAYMOND GRIMES,               :
                              :
          Defendant.          :
                              :
- - - - - - - - - - - - - - -X    Newark, New Jersey




B E F O R E:

               THE HONORABLE JOSE L. LINARES,
            UNITED STATES DISTRICT COURT JUDGE





     Pursuant to Section 753 Title 28 United States Code, the
following transcript is certified to be an accurate record
as taken stenographically in the above-entitled proceedings.
s/Phyllis T. Lewis, CSR, CRR
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                PHYLLIS T. LEWIS, C.S.R., C.R.R.
   Official Court Reporter - United States District Court
        P.O. Box 25588, Newark, New Jersey  07101
                       (732) 735-4522
```

1          THE COURT:  This is in the matter of United States
2     versus Allen Travers, Criminal No. 08-387(JLL).
3          This matter comes before the Court on the
4     suppression motion of Allen Travers filed on March 9th,
5     2009.  The Court has fully considered the submitted briefs,
6     the testimony of the witnesses, and the evidence that was
7     introduced at the suppression hearing, the Court held on
8     July 7th and 8th, 2009.  The Court has also considered the
9     oral argument of counsel at the conclusion of the aforesaid
10    hearing.  This Court determines that the motion to suppress
11    by the defendant Allen Travers should be denied.
12         At the suppression hearing, substantial testimony
13    was offered concerning many matters, which are not
14    necessarily material to the issues before this Court.  One
15    area of evidence and testimony submitted, however, seems
16    uncontroverted.  The uncontroverted facts indicate that on
17    March 16th, 2008, Newark Police Officer Michael Grainger
18    observed Allen Travers, the defendant in this case, walking
19    on Dayton Street in Newark, New Jersey.  There was some
20    dispute as to whether there was an inconsistency in Officer
21    Grainger's notes and his subsequent testimony with regard to
22    the direction of travel by Allen Travers.  However, it is
23    undisputed by the evidence that the defendant was in fact
24    walking on Dayton Street in Newark.
25         Travers then turned onto Whittier Place.  Again,

3

this is not contested by any of the evidence presented, and in fact, it is buttressed by the testimony of Officer Kevin Wright who assisted on the stop.

Again uncontroverted is the fact that after Travers turned onto Whittier Place, Officer Grainger, now Detective Grainger, followed in his police car. This is something which is again buttressed by the evidence presented including the audio tapes, which indicate that Officer Grainger radioed for backup from another police officer whose vehicle was stationed at the other end of Whittier Place.

There was some inconsistency with regard to the direction of travel at the backup police vehicle, but again, this inconsistency is minor and what is undisputed is that the vehicle was at Whittier Place, that Officer Grainger in fact called for backup, and that that vehicle then proceeded to turn onto Whittier Place to assist on the stop.

It is also undisputed that the officer that was assisting Grainger on the stop drove part of the way up Whittier Place and exited his police car and began to approach Travers.

During the testimony of Officer Grainger at the hearing, it was brought out through cross-examination that Officer Grainger indicated in his police report that he had stopped the defendant because he fit the description of

someone involved in a shooting that occurred the previous evening. The Government produced evidence that in fact there was a shooting the previous evening, and the officer that was called as a witness by the defendant, Officer Hughes, indicated that he had in fact been provided with some information regarding the description of an alleged shooter, but cross-examination revealed that no police reports were ever written or reported with regard to the alleged description.

With regard to what transpired at the actual stop of the defendant, the testimony of Officer Grainger was that he directed Travers to remove his hand from his pocket, and Travers complied, and then he asked Travers where he lived. to which Travers replied that he lived on Leslie Street, which the officer knew to be quite a distance away from where the stop was occurring.

As Officer Wright was approaching, according to Grainger, Travers pushed Officer Grainger and attempted to flee.

The undisputed evidence shows that at the time of the stop, Travers was the subject of an arrest warrant issued by this Court on March 6th, 2008 and had been accused of violations of supervised release.

According to the testimony of the officers involved in the stop, as Travers attempted to flee, they then subdued

1 Travers during which time, as they were affecting the
2 arrest, a gun was observed and removed from Travers'
3 waistband.  Travers was thereafter charged with a violation
4 of possession of a firearm by a convicted felon.  Cross
5 examination brought out the fact that there were no charges
6 filed against Travers for resisting arrest or attempting to
7 flee.
8           The Court heard testimony from three Newark police
9 officers in this matter, Officer Grainger, Officer Wright
10 and Officer Hughes.  Only Officer Grainger and Officer
11 Wright testified as to the facts concerning the events of
12 the actual arrest.  Hughes' testimony was only limited as to
13 conversations he had with Wright concerning the police
14 response to a shooting at the Newark Seth Boyden Housing
15 Complex the night before Travers' arrest and the alleged
16 description of the alleged shooter.
17           This Court also had the benefit of listening to an
18 audio recording of the Newark police radio activity that
19 evening and received into evidence other documents
20 concerning Travers' case, including other police reports.
21           The testimony of the officers is not completely
22 consistent in all respects.  For example, the police report
23 does not as written coincide with Grainger's testimony about
24 the direction of travel that Travers was walking on Dayton
25 Street on the date of the arrest.  Officer Wright also

failed to remember the date or the specific year on which Travers' arrest took place. Finally, when radioing for backup, Officer Grainger directed Wright to turn right on Whittier, although Wright testified that he in fact turned left onto Whittier.

The defense also challenges the credibility of Officer Hughes with regard to whether or not he in fact received a description of the shooter from the night before, in light of the fact that no police reports regarding this alleged description were ever written.

Nevertheless, notwithstanding said inconsistencies in the officers' testimony, the accounts of actual encounter with the defendant is consistent and credible in the opinion of this Court. The testimony of the officers was consistent and credible with regard to the location where Travers was stopped, where Officer Wright came from, and when he arrived at the scene.

It was consistent with regard to Travers attempting to flee, which is credible considering Travers' knowledge of the fact that he was in violation of probation and the subject of an arrest warrant. It is credible with regard to the fact that the officers upon Travers' flee attempt would apprehend him, and if the gun was in his waistband, that the gun would have been discovered during the arrest.

The testimony of the police officers is also

consistent with the radio transmission that this Court has heard and in large part is consistent with the police report that was prepared by Grainger at or near the time of the arrest.

The inconsistencies mentioned above are not of the type that would color the entire testimony of the police officers.

The Court also had the opportunity to observe the demeanor and manner of the officers as they testified regarding the acts surrounding the stop and the Court finds the officers to have been credible.

In examining all of this information in the light of the applicable legal standards, I find that the Government has demonstrated by a preponderance of the evidence that Travers, after having been stopped by Officer Grainger, pushed Grainger and attempted to flee. These actions by the defendant provided the officers with the requisite probable cause to arrest him and thus subsequently finding the gun and seizing same was legally appropriate as having been recovered during the search subsequent to the valid arrest.

The fact that Travers was not charged or that the officers did not choose to charge him with resisting arrest and/or assaulting a police officer, it does not render the officers' testimony with regard to the circumstances

1  surrounding the arrest not credible.

2        Travers is an individual who was already a
3  convicted felon, who knew he had a warrant for his personal
4  arrest and knew he was carrying a gun in violation of the
5  terms of his supervised release.

6        It is therefore reasonable to believe that upon
7  having been stopped for questioning by the police, knowing
8  he had an arrest warrant and knowing that he had a gun in
9  his possession, that he would attempt to flee, and that in
10 that attempt he would push a police officer in order to
11 effect his escape when a second officer had arrived, and it
12 became apparent that he would have to identify himself.

13       It is also of note that Grainger's inquiry about
14 his home address would likely have contributed to some level
15 of apprehension on Travers' part.

16       Therefore, based on the totality of the evidence
17 received and the totality of the circumstances, the Court
18 finds that the arrest was not a violation of the Fourth
19 Amendment, and that the seizure of the gun incident thereto
20 was appropriate.

21       For all of the foregoing reasons, the defendant's
22 motion to suppress is denied.

23

24                  *       *       *

25